**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **AVIATION SALES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 13-cv-6791** |
| | ) | |
| **v.** | ) | **Hon. Milton I. Shadur** |
| | ) | |
| **PEOPLE EXPRESS AIRLINES, INC.,** | ) | |
| **TEM ENTERPRISES d/b/a XTRA** | ) | |
| **AIRWAYS, and MICHAEL MORISI** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MOTION FOR ENTRY OF EX PARTE JUDGMENT BY CONFESSION

Aviation Sales, LLC ("Aviation Sales"), by its undersigned counsel, submits this Motion for Entry of an Ex Parte Judgment by Confession against defendants People Express Airlines, Inc. ("People Express") and TEM Enterprises d/b/a XTRA Airways ("TEM"), and states as follows:.

1.      The above-captioned cause was filed on September 19, 2013 and is presently pending before this Court.

2.      Plaintiff asserts in its Complaint (i) a claim against defendants People Express and TEM for breach of contract arising out of a promissory note executed by the defendant Morisi, as President and CEO of People Express and TEM, in favor of Plaintiff dated September 3, 2013 in the original principal amount of $171,000.00 (the "Note") (a true and correct copy of the Note is attached hereto as Exhibit A, pp. 1-4) (Count I) and (ii) a claim against the defendant Michael Morisi for breach of contract arising out of a Commercial Guaranty executed by Morisi in favor

of Plaintiff dated September 3, 2013 (the "Morisi Guaranty") (a true and correct coy of the

Morisi Guaranty is attached as <u>Exhibit A</u>, pp. 5-12) (Count II).

       3.       735 ILCS 5/2-1301(c) provides, in pertinent part:

(c)...any person for a debt bona fide due may confess judgment by himself or herself or attorney duly authorized, without process. The application to confess judgment shall be made in the county in which the note or obligation was executed...[a] judgment entered by any court in any county other than those specified herein has no force or validity, anything in the power to confess to the contrary notwithstanding.

735 ILCS 5/2-1301(c) (West 2009).

       4.       The Note expressly provides at page 3 thereof as follows:

**Confession of Judgment.** MAKERS HEREBY IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST MAKERS FOR THE UNPAID AMOUNT OF THIS NOTE AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF PAYEE SETTING FORTH THE AMOUNT THEN DUE, ATTORNEYS' FEES PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. IF A COPY OF THIS NOTE, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. MAKERS WAIVE THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS PAYEE MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL. MAKERS HEREBY WAIVE AND RELEASE ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH MAKERS MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH MAKERS HAVE GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

Exhibit A, p. 2.

5.      Plaintiff submits herewith as <u>Exhibit B</u> the Affidavit of Victoria Ricks, sole Member and Manager of Aviation Sales, verifying the Note and setting forth the amounts from People Express and TEM due under the Note.

6.      Plaintiff also submits herewith as <u>Exhibit C</u> a Confession executed by Mónica M. Millán, a licensed Illinois attorney, on behalf of Defendants People Express and TEM confessing judgment against Defendants pursuant to the express provision of the Note.

7.      Finally, Plaintiff submits herewith as <u>Exhibit D</u> the affidavit of Daniel Lynch setting forth the attorneys' fees and costs incurred in prosecuting this matter.

WHEREFORE, Plaintiff, Aviation Sales, respectfully requests that this Court, pursuant to the express confession of judgment provisions of the Note, along with the Confession submitted herewith, (a) enter judgment by confession in favor of Plaintiff and against the Defendants People Express and TEM on Count I of the Complaint and (b) grant such further and additional relief as this Court may deem just and proper.

Dated: October 16, 2013                          Respectfully submitted,

                                                 **AVIATION SALES, LLC**

                                                 By:  <u>/s/ Daniel Lynch              </u>
                                                      One of Its Attorneys

Daniel Lynch (ARDC No. 6202499)
Daniel P. Kelly (ARDC No. 6296906)
Lynch & Stern LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 346-1600
Facsimile: (312) 896-5883
Email: dan@lynchandstern.com
        dkelly@lynchandstern.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on October 16, 2013, he caused to be electronically filed the foregoing **Motion for Ex Parte Judgment by Confession** by using the CM/ECF system, copies of which were sent to the parties on the attached service list in the manner indicated.

/s/ Daniel Lynch

## SERVICE LIST

### Case No. 13-cv-06791

**VIA FIRST CLASS MAIL**

Michael Morisi
902 Bland Ave.
Newport News, VA 23602

TEM Enterprises d/b/a XTRA Airways
c/o CSC Services of Nevada, Inc.
2215-B Renaissance Drive
Las Vegas, NV 89199

People Express Airlines, Inc.
c/o The Company Corporation
2711 Centerville Rd.
Wilmington, DE 19801

# Exhibit A

**PROMISSORY NOTE**

**Makers**:

TEM Enterprises
d/b/a XTRA Airways
805 W. Idaho Street, Suite 400
Boise, ID 83702

People Express Airlines, Inc.
902 Bland Boulevard
Newport News, VA 23602

**Payee**:

Aviation Sales, LLC
2720 N. Bosworth Ave
Chicago, IL 60614

**Note Date**:  September 3, 2013

**Principal Amount**:  $171,000

**Maturity Date**: October 3, 2013

     **Promise to Pay.**  TEM Enterprises d/b/a XTRA Airways and People Express Airlines, Inc. ("Makers") hereby promise to pay to the order of Payee, at Payee's address set forth above or such other address as Payee may from time to time designate, the principal sum of One Hundred Seventy-One Thousand Dollars ($171,000.00).

     **Payment.**  The Payee of this Promissory Note (the "Note"), in accordance with the provisions of the June 21, 2013 Preliminary Terms Agreement ("Terms Agreement") between TEM Enterprises and Payee, made an advance of $250,000.00 (the "Initial Funding").  Payee acknowledges that Makers have repaid $100,000.00 of the Initial Funding and a rent payment of $21,000.00, in accordance with the provisions of the July 19, 2013 Letter Agreement ("Letter Agreement").  The amount outstanding on the Note shall bear interest thereon from the date hereof to and including the date this Note is paid in full, at the following fixed rate: from the date of this Note until the Maturity Date (as defined above), eighteen percent (18%) per annum.  Interest shall be collected based upon a 360-day year multiplied by the actual number of days for which interest has accrued.  Payments shall be made by Makers to Payee in accordance with the following:

     (a)     If Makers make a payment of $150,000.00 on or before September 18, 2013, Payee shall deem the Note to be satisfied in full;

     (b)     If Makers fail to pay $150,000.00 on or before September 18, 2013, Makers promise to pay to the order of Payee, a monthly rent payment of $21,000.00, in accordance with the terms of the Letter Agreement, by no later than September 18, 2013;

(c)     Makers expressly acknowledge that the payment of $21,000.00 due on Wednesday, September 18, 2013 does not constitute interest on the Note, but rather rent due under the Letter Agreement; and

(d)     In the event that the $21,000.00 rent payment is timely made on September 18, 2013, Makers promise to pay the order of Payee, a repayment in the amount of $150,000.00 by Thursday, October 3, 2013.

**Collateral.**  This Note shall be collateralized by the personal guarantee of Michael Morisi (attached as **Exhibit 1** to this Note).  Upon the occurrence of an Event of Default (as defined in the Terms Agreement), both Payee and Makers shall have all the rights and remedies described in the Terms Agreement.

**Prepayment.**  This Note may be paid in full or part by the Makers at any time prior to the Maturity Date without premium or penalty.

**Attorneys' Fees; Expenses.**  Makers will pay and the Payee of this Note shall be awarded as a part of any judgment upon this Note all reasonable costs of collection paid or incurred by the Payee in enforcing this Note upon default, including but not limited to attorney fees and costs related to the preparation, prosecution and appeal of any enforcement action.

**Jury Waiver.**  Makers and Payee hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Makers or Payee against the other.

**Confidentiality.**  This Note and the terms, conditions and information contained herein are confidential and are between Maker and Payee only and will not be disclosed by a party to third parties except (a) with the written authority of the other party hereto, (b) so far as may be necessary for the proper performance of its obligations hereunder, (c) as required by law or as ordered by a court of competent jurisdiction or by the relevant governmental entity responsible for taxation or any other applicable regulatory authority, and (d) to such party's auditors, attorneys or other professional advisers, lenders, potential lenders, equity participants or potential equity participants.

**Representations and Warranties.**  Makers represent and warrant to Payee that Makers' execution, delivery, and performance of this Note does not conflict with, result in a violation of, or constitute a default under any agreement or other instrument binding upon Makers or any law, governmental regulation, court decree, or order applicable to Makers or to Makers' properties. Michael Morisi has the full authority to execute this Note on behalf of Makers.  This Note constitutes legal, valid, and binding obligations of Makers enforceable against Makers in accordance with its respective terms.

**Governing Law.**  This Note will be governed by the laws of the State of Illinois, without regard to its conflict of law provisions.  This Note has been accepted by Payee in the State of Illinois.

**Choice of Venue.**  If there is a lawsuit, Makers submit to the jurisdiction of the courts of

Cook County, State of Illinois and the Federal courts located in Cook County, State of Illinois. At the option of the Payee, all lawsuits whether brought by Payee or Makers arising out of or relating to this Note shall be heard by the courts of Cook County, State of Illinois or the Federal courts located in Cook County, State of Illinois.

**Confession of Judgment.** MAKERS HEREBY IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST MAKERS FOR THE UNPAID AMOUNT OF THIS NOTE AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF PAYEE SETTING FORTH THE AMOUNT THEN DUE, ATTORNEYS' FEES PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. IF A COPY OF THIS NOTE, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. MAKERS WAIVE THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS PAYEE MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL. MAKERS HEREBY WAIVE AND RELEASE ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH MAKERS MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH MAKERS HAVE GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

**Successor Interests.** The terms of this Note shall be binding upon Makers, and upon Makers' heirs, personal representatives, successors, and assigns, and shall inure to the benefit of Payee and its successors and assigns.

**General Provisions.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Payee may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Makers and any other person who signs, guarantees, or endorses this Note, to the extent allowed by law, waive presentment, notice of dishonor and protest, and assent to any extension of time with respect to any payment due under this Note, to any substitution or release of collateral and to the addition or release of any party. No waiver of any payment or other right under this Note will operate as a waiver of any other payment or right. The obligations under this Note are joint and several. All capitalized terms first appearing above will have the meanings ascribed wherever they appear in this Note.

**[Remainder of this Page Intentionally Left Blank.]**

PRIOR TO SIGNING THEIS NOTE, MAKERS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  MAKERS AGREE TO THE TERMS OF THE NOTE.

MAKERS ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

MAKERS:

**TEM ENTERPRISES**

By: _____
Michael Morisi, President & CEO

**PEOPLE EXPRESS AIRLINES, INC.**

By: _____
Michael Morisi, President & CEO

AS TO THE REPRESENTATIONS AND WARRANTIES:

**MICHAEL MORISI**

By: _____
Michael Morisi, Individually

## EXHIBIT 1

## COMMERCIAL GUARANTY

**Borrower:**    TEM Enterprises      **Lender:**    Aviation Sales, LLC
                 d/b/a XTRA Airways                    2720 N. Bosworth Ave
                 805 W. Idaho Street                    Chicago, IL 60614
                 Suite 400
                 Boise, ID 83702

                 People Express, Inc.
                 902 Bland Boulevard
                 Newport News, VA 23602

**Guarantor:**    Michael Morisi
                 902 Bland Ave.
                 Newport News, VA 23602

**MAXIMUM GUARANTY LIABILITY:**   $171,000.00

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.**   For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under that certain Promissory Note to Borrower in the original amount of $171,000.00, including but not limited to any and all renewals and/or extensions thereof, the Preliminary Terms Agreement and the other Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note, the Preliminary Terms Agreement and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances,

loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.**  The words "Guarantor's Share of the Indebtedness" as used in this guaranty means an amount not to exceed One Hundred and Seventy-One Thousand and no/100 Dollars ($171,000.00) of the amount of Indebtedness that is outstanding from time to time and at any one or more times.  Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor to Lender under this Guaranty, but will not be reduced by sums paid to Lender from any other source.

**CONTINUING GUARANTY.**  THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.  ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing.  Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing.  Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation.  For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due.  For this purpose and without limitation, "new Indebtedness" does not include

all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all

of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever. Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both. The undersigned, as a further inducement to the Lender to extend credit to the Borrower hereby waives any and all defenses otherwise available under Section 1 of the Illinois Sureties Act.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that

the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**CONFESSION OF JUDGMENT.** GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST GUARANTOR FOR THE UNPAID AMOUNT OF THIS GUARANTY AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF LENDER SETTING FORTH THE AMOUNT THEN DUE, ATTORNEYS' FEES PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. IF A COPY OF THIS GUARANTY, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. GUARANTOR WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS GUARANTY HAVE BEEN PAID IN FULL. GUARANTOR HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH GUARANTOR MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH GUARANTOR HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in

connection with the enforcement of this Guaranty.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** THIS GUARANTY WILL BE GOVERNED THE LAWS OF THE STATE OF ILLINOIS, WITHOUT REGARD TO ITS CONFLICT OF LAWS PROVISIONS. THIS GUARANTY HAS BEEN ACCEPTED BY LENDER IN THE STATE OF ILLINOIS.

**Choice of Venue.** If there is a lawsuit, Guarantor submits to the jurisdiction of the courts of Cook County, State of Illinois and the Federal courts located in Cook County, State of Illinois. At the option of the Lender, all lawsuits whether brought by Lender or Guarantor arising out of or relating to this Guaranty or the Related Documents shall be heard by the courts of Cook County, State of Illinois or the Federal courts located in Cook County, State of Illinois.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when

deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** LENDER AND GUARANTOR HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER LENDER OR GUARANTOR AGAINST THE OTHER.

**DEFINITIONS.** Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

12

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

THIS GUARANTY IS DATED SEPTEMBER 4, 2013, EFFECTIVE AS OF SEPTEMBER 3, 2013.

GUARANTOR:

_____
Michael Morisi, Individually

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AVIATION SALES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 13-cv-6791** |
| | ) | |
| **v.** | ) | **Hon. Milton I. Shadur** |
| | ) | |
| **PEOPLE EXPRESS AIRLINES, INC.,** | ) | |
| **TEM ENTERPRISES d/b/a XTRA** | ) | |
| **AIRWAYS, and MICHAEL MORISI** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

<u>**DECLARATION OF VICTORIA RICKS**</u>

I, Victoria Ricks, being first duly sworn, depose and upon my oath state that if called to testify in these proceedings, I would testify as follows:

1.    I am the sole Member and Manager of Aviation Sales, LLC ("Aviation Sales") the plaintiff in the above-captioned cause, and I am duly authorized to make this affidavit on behalf of Plaintiff.

2.    Pursuant to my duties as Manager of Aviation Sales, I have personal knowledge of the matters related to the transaction between Plaintiff and the defendants, People Express Airlines, Inc. ("People Express"), TEM Enterprises d/b/a XTRA Airways ("TEM"), and Michael Morisi ("Morisi") and the documents maintained in the ordinary course of business of Plaintiff relative to the transaction as further set forth in this Affidavit.  I have reviewed the allegations of the Complaint for Confession filed on behalf of Plaintiff in the above-captioned cause and they are true.

3.     Aviation Sales, LLC is a Delaware limited liability company.  I am the sole member of Aviation Sales.  Aviation Sales' business includes purchasing and leasing commercial aircraft.

4.     A true and correct copy of the Promissory Note dated September 3, 2013 in the original principal amount of $171,000.00 executed by Michael Morisi, as the President and CEO of People Express and TEM, in favor of Plaintiff is attached to the Complaint as Exhibit A, pp. 1-4, and incorporated herein by reference (the "Note").

5.     People Express and TEM have been in default under the terms and conditions of the Note as a result of their failure to make payments required by the Note in a timely manner, on or before September 18, 2013.

6.     As a result of the aforesaid breach by People Express and TEM of their obligations to Plaintiff under the Note, as of October 9, 2013, there is due and owing to Aviation Sales from People Express and TEM, the following amounts:

| | |
|---|---|
| Principal: | $171,000.00 |
| Accrued Interest: | $3,078.00 |
| **TOTAL:** | **$174,078.00** |

Per the terms of the promissory note, the interest rate is $85.50 per day.

7.     In addition to the foregoing, People Express and TEM agreed to reimburse Plaintiff for attorneys' fees and related costs incurred by Plaintiff in enforcing its rights arising out of the Note.  As of the filing of this Affidavit, Plaintiff has incurred attorneys' fees in connection with this matter in the amount of $3,662.50 and expenses of $1,068.60.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

2

Executed this 16th day of October, 2013.

_____

Victoria Ricks

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AVIATION SALES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 13-cv-6791** |
| | ) | |
| **v.** | ) | **Hon. Milton I. Shadur** |
| | ) | |
| **PEOPLE EXPRESS AIRLINES, INC.,** | ) | |
| **TEM ENTERPRISES d/b/a XTRA** | ) | |
| **AIRWAYS, and MICHAEL MORISI** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>CONFESSION</u>

Defendants, People Express Airlines, Inc. ("People Express") and TEM Enterprises d/b/a

XTRA Airways ("TEM"), individually and jointly and severally, by their attorney, Mónica M.

Millán, waive service of process and confess that there is due to plaintiff, Aviation Sales, LLC,

under the Promissory Note at issue in the above-captioned cause, the following amounts as of

October 9, 2013:

| | |
|---|---|
| Principal: | $171,000.00 |
| Accrued Interest: | $3,078.00 |
| **TOTAL:** | **$174,078.00** |
| Attorneys' Fees: | $3,662.50 |
| Costs & Expenses: | $1,068.60 |
| **TOTAL:** | **$178,809.10** |

Defendants, People Express and TEM agree that judgment may be entered against them,

individually and jointly and severally, for the total set forth above and for costs and attorneys

fees and hereby release and waive all rights as authorized in the warrant of attorney set forth in

the Promissory Note.

Dated: October 16, 2013

Respectfully submitted,

**PEOPLE EXPRESS AIRLINES, INC. and TEM ENTERPRISES d/b/a XTRA AIRWAYS**

By: <u>Mónica M. Millán</u>
     One of Their Attorneys

Mónica M. Millán (ARDC No. 6288420)
Lynch & Stern LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 346-1600
Facsimile: (312) 896-5883
Email: mmillan@lynchandstern.com

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AVIATION SALES, LLC, | ) |
| | ) |
| Plaintiff, | )     Case No. 13-cv-6791 |
| | ) |
| v. | )     Hon. Milton I. Shadur |
| | ) |
| PEOPLE EXPRESS AIRLINES, INC., | ) |
| TEM ENTERPRISES d/b/a XTRA | ) |
| AIRWAYS, and MICHAEL MORISI | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF DANIEL LYNCH

I, Daniel Lynch, being first duly sworn, depose and upon my oath state that if called to testify in these proceedings, I would testify as follows:

1.     I am an attorney licensed to practice before the courts of Illinois, Colorado (inactive), the United States District Courts for the Northern District of Illinois (including Trial Bar), Central District of Illinois, Southern District of Illinois, and District of Colorado, and the United States Courts of Appeals for the Seventh, Eighth, Second, and Tenth Circuits.

2.     I earned a Bachelor of Arts degree from the University of Colorado at Boulder in 1985, and graduated from Northwestern University School of Law in 1988.

3.     Prior to forming my current firm now known as Lynch & Stern LLP, I spent fourteen years at the Chicago office of Jenner & Block, where I was a member of the firm's Litigation Department in its Securities Litigation, Class Action Litigation, and Insurance Coverage practice groups.

4.     I have served as lead trial counsel in cases tried to verdict in the United States District Courts, civil and criminal courts in Illinois, and also in the state courts of Colorado and Maryland.

5.     I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.  I make this declaration in support of Aviation Sales LLC's request for attorneys' fees, as set forth in Plaintiff's Motion for Entry of Confession of Judgment.

6.     I am counsel of record for this matter and represent Plaintiff Aviation Sales, LLC. As reflected in the table set forth as part of paragraph 7, I was also assisted on this matter by several Lynch & Stern associates, who worked under my supervision.  All of the work performed on this matter by Lynch & Stern associates was assigned or approved by me.

7.     The table below is a detailed summary of the amount of time spent by me and other Lynch & Stern associates who were involved in this litigation.  It does not include any time devoted to preparing this declaration.

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 09/17/2013 DFL | Study e-mail from M. Morisi re delay in payment. Telephone conference with M. Millan re same. Work on response to M. Morisi. | 0.25 | $96.25 |
| 09/17/2013 MMM | Study e-mail from M. Morisi regarding ability to make payments under promissory note, study e-mails from client and D. Lynch re same, prepare draft complaint for confession of judgment, motion for entry of ex parte judgment by confession, affidavit of V. Ricks, and confession. | 2.25 | $506.25 |
| 09/18/2013 DFL | Telephone conference with B. Hollnagel, V. Ricks and M. Millan re draft complaint and work on same. Study e-mails from B. Hollnagel. | 0.25 | $96.25 |

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 09/18/2013 MMM | Revise draft complaint for confession of judgment, motion for entry of ex parte judgment by confession, affidavit of V. Ricks, and confession, study e-mail from client re same. | 0.75 | $168.75 |
| 09/19/2013 DFL | Work on draft complaint. | 0.25 | $96.25 |
| 09/20/2013 DFL | Study e-mail from M. Morisi and respond to same. Study e-mails from B. Hollnagel and M. Millan re status of filing complaint. Work on filing complaint and appearance in federal court. | 0.75 | $288.75 |
| 09/20/2013 MMM | Study e-mail from M. Morisi regarding repayment schedule and study e-mails from D. Lynch and client re same, telephone conference with client re same and draft complaint for confession of judgment, e-mail to D. Kelly re logistics of filing complaint, study e-mails from client and D. Kelly re service of process of complaint for confession of judgment. | 0.50 | $112.50 |
| 09/20/2013 DPK | Study e-mail from D. Lynch regarding logistics of filing complaint, telephone conferences with D. Lynch, A. Stern and A. Plebanski regarding same, study e-mails from client and M. Millan re service of process of complaint for confession of judgment. | 1.00 | $225.00 |
| 09/23/2013 DFL | Study e-mails from B. Hollnagel and M. Millan re service on M. Morisi. Telephone conference with D. Kelly re same. Finalize summonses to defendants for filing with court. Study e-mails from M. Millan and M. Morisi re complaint. | 0.50 | $192.50 |
| 09/23/2013 MMM | Study e-mail from client regarding status of service of process, prepare response to client's inquiry regarding service of process under Fed. R. Civ. P. 4, study e-mail correspondence with M. Morisi regarding complaint for confession of judgment. | 0.50 | $112.50 |

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 09/23/2013 DPK | E-mail and telephone correspondence with A. Plebanski regarding status of summonses, e-mail and telephone correspondence with A. Plebanski regarding engagement of process server, study e-mail from client regarding status of service of process, study e-mail correspondence between M. Millan and M. Morisi regarding complaint for confession of judgment. | 1.75 | $393.75 |
| 09/24/2013 DFL | Telephone conference with D. Kelly re service of summonses. Telephone conference with M. Millan re response to M. Morisi and work on same. | 0.25 | $96.25 |
| 09/24/2013 DPK | Telephone and e-mail correspondence with process server regarding potential engagement, telephone correspondence with D. Lynch re same, e-mail correspondence with client re same. | 0.75 | $168.75 |
| 09/25/2013 DFL | Study e-mail from D. Kelly re status of process server. | 0.00 | 0.00 |
| 09/25/2013 DPK | E-mail correspondence with client re engagement of process server. | 0.25 | $56.25 |
| 09/26/2013 DPK | Telephone and e-mail correspondence with process server regarding service of process, telephone correspondence with client re same. | 0.75 | $168.75 |
| 09/27/2013 MMM | E-mail correspondence with A. Plebanski re status of billing entries for preparation of affidavit of D. Lynch to be filed with motion for confession of judgment. | 0.25 | $56.25 |
| 09/30/2013 MMM | Study e-mail from client regarding status of service of process on M. Morisi. | 0.25 | $56.25 |
| 09/30/2013 DPK | E-mail correspondence with client regarding status of service of process on M. Morisi. | 0.50 | $112.50 |
| 10/01/2013 DFL | Study order setting initial status hearing. | 0.25 | $96.25 |
| 10/02/2013 MMM | Study e-mail from D. Kelly regarding status of service of process on People Express, TEM Enterprises, and M. Morisi. | 0.25 | $56.25 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 10/02/2013 DPK | Study e-mail from process server regarding status of service of process on People Express, e-mail correspondence with client and M. Millan regarding status of service of process on People Express, TEM Enterprises, and M. Morisi. | 0.50 | $112.50 |
| 10/04/2013 DPK | Study e-mail from process server regarding affidavit of service on TEM Enterprises. | 0.25 | $56.25 |
| 10/07/2013 DPK | Study e-mail from process server regarding status of service of process on TEM Enterprises, e-mail correspondence with process server regarding service of process on M. Morisi. | 0.50 | $112.50 |
| 10/08/2013 DPK | E-mail correspondence with client regarding service of process. | 0.25 | $56.25 |
| 10/09/2013 MMM | Study e-mails from D. Kelly and client regarding status of service of process on M. Morisi; e-mail A. Plebanski regarding status of billing for inclusion in affidavit of D. Lynch. | 0.25 | $56.25 |
| 10/09/2013 DPK | Study e-mail from process server regarding status of service of process on M. Morisi, e-mail correspondence with client, D. Lynch, and M. Millan regarding same. | 0.50 | $112.50 |
| | **TOTAL** | **14.5** | **$3,662.50** |

8.    The hourly rates for me, other Lynch & Stern associates, and my professional support staff included in the table set forth in paragraph 7 were, at the time the work was performed, reasonable and customary hourly rates charged by similar lawyers and professionals in similar litigation.

9.    Additionally, the firm incurred a total of $1,068.60 in advances on this matter from its inception through October 10, 2013, detailed as follows:

| Advances | | |
|---|---|---|
| 9/20/13 | Filing Fee – Complaint | $400.00 |
| 10/01/13 | Process Server Fee – Service on TEM Enterprises d/b/a XTRA Airways | $179.90 |
| 10/01/13 | Process Server Fee – Service on Peoples Express | $179.90 |
| 10/08/13 | Process Server Fee – Service on Michael Morisi | $308.80 |
| | **TOTAL** | **$1,068.60** |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___16___ day of October, 2013.

_____
Daniel Lynch (ARDC No. 6202499)
Lynch & Stern LLP'
150 S. Wacker Dr., Suite 2600
Chicago, Illinois 60606
Counsel for Plaintiff

6